IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ROBERT SANTY, | ) | Case No. 5:16-cv-777 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

I.      **Introduction**

Plaintiff, Michael Robert Santy ("Santy"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

II.     **Procedural History**

Santy filed an application for SSI on January 26, 2012, alleging a disability onset date of December 15, 2006.  (Tr. 187, 205)  Santy alleged disability based on ADHD and a learning disability.  (Tr. 209)  Santy's application was denied initially on April 17, 2012, (Tr. 107) and upon reconsideration on July 27, 2012.  (Tr. 115)  Thereafter, Santy filed a written request for

hearing on August 20, 2012.  (Tr. 120)  An initial hearing was commenced on November 21, 2013, but Santy failed to appear.  However, testimony was taken from Vocational Expert Kevin Yi.  (Tr. 28)   The matter was dismissed January 31, 2014.  (Tr. 10, 98, 103) The dismissal was vacated on February 21, 2014, and a second hearing was scheduled.  (Tr. 103-05)  Santy missed the second scheduled hearing on August 14, 2014; his attorney reported that Santy was in the hospital at that time.  (Tr. 40-41)   Santy appeared for a third scheduled hearing held on September 5, 2014, and testified before Administrative Law Judge Keith Kearney ("ALJ").  (Tr. 44-75)  The ALJ denied Santy's claim for benefits on September 15, 2014.  (Tr. 7-24)  The Appeals Council denied review of that decision on January 29, 2016, rendering the ALJ's September 5, 2014, decision the final decision of the Commissioner.  (Tr. 1-5)

### III.    Evidence

Santy raises only a single argument for review: that the ALJ erred by not considering whether Santy produced evidence sufficient to meet Listing 12.05(C), 20 C.F.R. Part 404, Subpart P, Appendix 1.  Santy contends there was evidence in the record to show that he met the requirements of Listing 12.05(C), and prays for an order of remand so that the Commissioner can so find.  Because the issue is limited and in the interest of the efficient use of judicial resources, the undersigned will only summarize the evidence that is necessary to address that discrete issue.

In September 1998, School Psychologist Brian Hill conducted a Wechsler Intelligence Scale for Children – Third Edition  IQ assessment of Santy.[1]  (Tr. 278-79, 294)   Santy earned the following scores on that assessment:  81 Verbal Score; 66 Performance Score, and 71 Full Scale IQ Score.  (Tr. 278, 294)  In interpreting the test results, Mr. Hill stated that "it appears that [Santy] is currently functioning in the Borderline range of overall cognitive functioning.

---

[1] Santy appears to have been going by the name Michael Grosjean at that time.  (Tr. 278)

However, it appears that motivation and social-emotional status may be impacting these scores in a negative manner.  Many tasks were completed well-within the time limit, but were completed incorrectly."  (Tr. 279)

Santy also took an intelligence test as part of a 2012 consultative evaluation.  (Tr. 353-59)  The consultative evaluation was conducted by Joan Williams, Ph.D.  (Tr. 353)  As part of the evaluation, Santy was evaluated with the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV").  Santy earned the following scores on the WAIS-IV:  74 Verbal Comprehension; 81 Perpetual Reasoning; 66 Working Memory; 81 Processing Speed; and 71 Full Scale IQ.  (Tr. 357)  In interpreting the test results, Dr. Williams opined that, "claimant's intelligence appears borderline.  Memory functions, such as, recall of present and past events or incidental memory appeared to be somewhat better than measured." (Tr. 358)

### IV.     Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[2]....

42 U.S.C. § 423(d)(2)(A).

---

[2] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## V.    The ALJ's Decision

The ALJ issued a decision on September 15, 2014.  A summary of his findings are as follows:

1. Santy had not engaged in substantial gainful activity January 26, 2012, the application date.  (Tr. 12)

2. Santy has the following severe impairments:  borderline intellectual function[ing]; attention deficit hyperactivity disorder (ADHD); and

4

depression.  (Tr. 12)

3. Santy does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 12)

4. Santy has the residual functional capacity to perform medium work; however, he must avoid workplace hazards such as unprotected heights and dangerous moving machinery; he is limited to simple, routine, repetitive tasks, requiring only simple work-related decisions; hearing and understanding simple oral instructions and to communicating simple information; can tolerate few changes in routine work setting and when changes do occur, they must take place gradually and occur infrequently; only occasional interaction with a small group of coworkers, where the contact is casual in nature, he should have no interaction with the general public.  (Tr. 14)

5. Santy was born on September 24, 1985, and was 26 years old, which is defined as a younger individual, on the date the application was filed.  (Tr. 19)

6. Santy has a limited education and is able to communicate in English.  (Tr. 19)

7. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.  (Tr. 19)

8. Considering Santy's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 19)

Based on these findings, the ALJ determined that Santy had not been under a disability since January 26, 2012, the date the application was filed.  (Tr. 20)

## VI.    Law & Analysis

### A.    Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");

5

*Kinsella v. Schweiker,* 708 F.2d  1058, 1059 (6th Cir. 1983).  Substantial evidence has been

defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and*

*Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

      The Act provides that "the findings of the Commissioner of Social Security as to any fact,

if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3).

The findings of the Commissioner are not subject to reversal merely because there exists in the

record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762,

772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v.*

*Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also

support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270,

273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference.  *Mullen,* 800 F.2d at 545 (*citing*

*Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

      In addition to considering whether the Commissioner's decision was supported by

substantial evidence, the court must determine whether proper legal standards were applied.

Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th

Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported

by substantial evidence, however, a decision of the Commissioner will not be upheld where the

SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

## B.      Santy Did Not Prove that He Met Listing 12.05

Santy's sole argument is the ALJ's failure to expressly consider at Step Three whether he met Listing 12.05 for intellectual disability[3] constitutes reversible error.  ECF Doc. No. 16, Page ID# 460.   At Step Three of the disability evaluation process, a claimant will be found disabled if he has an impairment or combination of impairments that meets or medically equals one of the listings in the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec*., 381 Fed. Appx. 488, 491 (6th Cir. 2010).  The listings streamline the disability decision-making process by identifying individuals who are unable to perform any

---

[3] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed.Reg. 46499 (Aug. 1, 2013) This change "d[id] not affect the actual medical definition of the disorder or available programs or services." Id. at 49500. We follow the agency's current nomenclature. Case law cited herein may use either term depending on the date of the decision.

gainful activity (not just substantial gainful activity) regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a)). Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing. 20 C.F.R. § 404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the criteria to "meet" the Listing. Id.; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).

At the time of Santy's ALJ decision, Listing 12.05 contained two parts.[4] The first part, which is referred to as the "diagnostic definition," required three subparts: 1) significantly sub-average general intellectual functioning; 2) deficits in adaptive functioning; and 3) onset before age twenty-two. Id., § 12.05; *See also Hayes v. Comm'r of Soc. Sec.*, 357 Fed.Appx. 672, 675 (6th Cir.2009). The second part, which is referred to as the "severity criteria" of subsection C, required two subparts: 1) a valid verbal, performance, or full scale IQ of 60 through 70; and 2) a physical or other mental impairment imposing an additional and significant work-related limitation or function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C); *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed.Appx. 639, 641 (6th Cir.2013).

The relevant Social Security regulations require the ALJ to find a claimant disabled if he meets a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Yet, neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks,* 544 Fed.Appx. at 641; *see also Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.Appx. 496, 507–08 (6th Cir.2006) ("it is well settled that[ ] 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by

---

[4] Federal courts will review the Commissioner's final decisions using the rule that was in effect at the time we issued the decision. See https://www.federalregister.gov/documents/2016/07/01/2016-15306/revised-medical-criteria-for-evaluating-neurological-disorders (last visited December 14, 2016).

a party.' ") (*quoting Loral Defense Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

Thus, the ALJ was not necessarily required to discuss Listing 12.05.  Here, however, because

Santy expressly asserted at the hearing that the evidence showed he met Listing 12.05, the ALJ

should have discussed the issue.  The Commissioner's brief acknowledges the ALJ's failure to

discuss the issue raised but contends the error was harmless because Santy never proved that he

had a "valid verbal performance, or full scale IQ score of 60 through 70 during the relevant time

period."  ECF Doc. No. 18, Page ID# 474.

The Sixth Circuit has held that remand is only appropriate when the record raises a

"substantial question" over whether a claimant meets a Listing.  *Smith-Johnson v. Comm'r of

Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x

639, 641–42 (6th Cir.2013) (*citing Abbot v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990)); *See also

Hobbs v. Comm'r of Soc. Sec.,* No. 1:13 CV 1411, 2014 WL 4545921, at *4 (N.D. Ohio Sept. 12,

2014) ("Two decisions of the Sixth Circuit …clarify the holding in Abbott to now be that an ALJ

is required to consider Listing 12.05 only where the record raises a substantial question as to

whether [the claimant] could qualify as disabled under that listing.")(internal quotations

omitted).

A claimant must do more than point to evidence on which the ALJ could have based his

finding in order to raise a "substantial question" as to whether he has satisfied a listing.  *Sheeks*,

544 Fed.Appx. at 641–42 (finding claimant did not raise a substantial question as to satisfying

the listing for intellectual disability where the ALJ's finding of borderline intellectual functioning

simply left open the question of whether he meets a listing and where claimant pointed to only a

few pieces of tenuous evidence addressing the listing).  Rather, the claimant must point to

specific evidence that demonstrates he reasonably could meet or equal every requirement of the

listing.  *See Sullivan*, 493 U.S. at 530, 110 S.Ct. 885 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify."); *Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001) (claimant must satisfy the diagnostic description and one of the four sets of criteria).  Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three.

In order to prove that the ALJ committed reversible error by failing to address Listing 12.05(C), Santy must point to specific evidence that he reasonably could meet the following three requirements:  (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning with evidence that the condition began before age twenty-two (i.e. the "diagnostic description"); (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation or function. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05(C); *Gibson v. Colvin*, No. 5:15-CV-49-JMH, 2016 WL 707367, at *4 (E.D. Ky. Feb. 22, 2016).

Santy contends that he met all of Listing 12.05's requirements, including the second requirement of 12.05(C) that he possess a valid verbal, performance, or full scale IQ of 60 through 70.  ECF Doc. No. 16, Page ID# 464; 20 C.F.R. 404, Subpt. P, Appx. 1 § 12.05C.  He argues that he has attained two IQ scores in listing range.  First he points to the results of his 1998 Wechsler Intelligence Scale for Children test which yielded a performance IQ of 66.  (Tr. 278)  Second, he points to his 2012 WAIS-IV IQ test where he received a working memory score of 66.  (Tr. 357)  In order to satisfy Listing 12.05(C), a claimant's IQ score must be valid. 20 C.F.R. Part 404, Subpt. P, App. 1.  For the following reasons, Santy has not provided valid IQ scores to meet Listing 12.05(C)'s requirement.

10

First, as argued by the Commissioner, although Santy's performance score on the 1988 IQ test (administered when Santy was age 13) was within the required range of 60 to 70 (Tr. 278), the regulations limit the validity of that score.[5]  .  According to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10)::

> IQ test results must be sufficiently current…Generally, the results of IQ tests tend to stabilize by the age of 16...IQ test results obtained between ages 7 and 16 should be considered current for…two years when the IQ is 40 or above…

By this standard, Santy's 1988 IQ test was only current until 1990 and could not be used to support the Listing 12.05(C) valid IQ score requirement on his 2012 application.[6]

---

[5] In addition to the fact that the score is not current, the ALJ pointed out that the report accompanying Santy's 1998 IQ test states that Santy was "functioning in the Borderline range of overall cognitive functioning.  However, motivation and social-emotional status may be impacting these scores in a negative manner." (Tr. 15, 279)  As Social Security regulations provides:  "The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. 404, Subpt. P, Appx. 1 § 12.00(D)(6)(a)

[6] Listing 112.00 presents mental disorders for children under age 18.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10).  However, the §112.00(D)(10) guidelines regarding how long adolescent IQ scores stay current has been found to invalidate IQ scores under Listing 12.05 by both Ohio district courts and the Sixth Circuit.  *See  Crum v. Comm'r of Soc. Sec.,* No. 15-3244, 2016 WL 4578357, at *5 (6th Cir. Sept. 2, 2016) [finding that claimant's IQ test scores obtained prior to age 16 were invalid for purposes of Listing 12.05(C) because, by applying Listing 112.00(D)(10), the tests results were only valid for two years]; *Townsend v. Comm'r of Soc., Sec. Admin*., No. 1:12CV2982, 2014 WL 809516, at *12 (N.D. Ohio Feb. 28, 2014) (finding an IQ test score from the time claimant was 10 years old was invalid to satisfy Listing 12.05(C) because of Listing 112.00(D)(10)'s age expiration limits); *See also Lete v. Colvin*, No. CIV.A. 14-66-GFVT, 2015 WL 4548736, at *3 (E.D. Ky. July 28, 2015)[applying §112.00(D)(10) to find that adult claimant's IQ tests from his school-aged years were invalid for purpose of establishing criteria under Listing 12.05(C)]; *Caplinger v. Colvin*, No. 1:13-CV-347, 2014 WL 4908954, at *11 (S.D. Ohio Sept. 30, 2014) (finding that the adult plaintiff's adolescent IQ score was no longer valid); *Redding v. Astrue*, No. CIV.A. 2:10-CV-00082, 2010 WL 3719248, at *16 (S.D. Ohio July 27, 2010), *report and recommendation adopted sub nom. Redding v. Comm'r of Soc. Sec.,* No. CIV.A. 2:10-CV-00082, 2010 WL 3719265 (S.D. Ohio Sept. 15, 2010) [finding that adult claimant's childhood IQ score was only valid for two years pursuant to §112.00(D)(10) and, therefore, was not a valid score for purposes of Listing 12.05].

Although Santy may not use the 1998 IQ score for the purpose of satisfying the 12.05(C) requirement to

11

Santy's 2012 IQ test scores also did not satisfy the IQ test result required by Listing 12.05(C). In 2012, Santy received a processing speed score of 81, a verbal score of 74, a full scale score of 71, and a working memory score of 66 (Tr. 357). Santy asserts that his "working memory" IQ score of 66 was within listing range, but Listing 12.05(C) requires a valid "verbal, performance, or full scale" score. Here, Santy's verbal and full scale scores were 74 and 71, respectively. Santy provides no legal authority or medical evidence for his assertion that a "working memory" score is equivalent to a "performance" IQ score. However, there is some authority to the contrary. *See e.g., Isaac ex rel. JDM v. Astrue*, No. CA 1:12-00097-C, 2012 WL 5373435, at *3-4 (S.D. Ala. Oct. 30, 2012) (finding that a WAIS-IV working memory score was not equivalent to a performance IQ score). More importantly, the Social Security Administration ("SSA") has stated that the "working memory" score is "a part of the full scale IQ score calculations in the earlier editions of the WAIS and continue[s] to be included in the full scale IQ score calculation in the WAIS-IV." *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 FR 66138-01, 2016 WL 5507752 at 31 (September 26, 2016). Thus, based on the SSA's interpretation, the working memory score would be encompassed within his full scale score of 71.

Because Santy has not shown that he has a valid "verbal, performance, or full scale" IQ score between 60 and 70, he has not provided evidence that there was a substantial question as to whether he met Listing 12.05(C). This means the ALJ's failure to address plaintiff's Listing 12.05(C) argument is harmless error; and, as discussed below, a remand order would not be

demonstrate a valid IQ score between 60 to 70, he "*may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested itself during his developmental period…" -- an issue which that is not discussed in this report and recommendation. *West v. Comm'r Soc. Sec. Admin.,* 240 F. App'x 692, 698 (6th Cir.2007)

appropriate because nothing would change upon further consideration.

Contrary to Santy's contention, the above analysis does not constitute improper post-hoc rationalization to excuse the ALJ's failure to consider Listing 12.05.  The Sixth Circuit has observed, "there is a fine line between a post-hoc rationalization and a determination as to whether the record evidence raises a substantial question."  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 (6th Cir. 2014).  In *Smith-Johnson*, the Sixth Circuit determined that it was proper for the court to "evaluate whether the findings and opinions of the mental-health professional that Smith–Johnson contends supports a disability determination raises a substantial question."  Similarly here, in order to determine whether Santy's IQ scores constitute "substantial evidence" that he meets Listing 12.05(C), it is necessary to determine whether any of the IQ scores are legally sufficient.[7] *See e.g., Lete v. Colvin*, No. CIV.A. 14-66-GFVT, 2015 WL 4548736, at *3 (E.D. Ky. July 28, 2015) (Although the ALJ did not consider Listing 12.05(C) the district court determined that the IQ tests were not valid).

Moreover, because the undersigned finds two listed scores to be insufficient as a matter of law, it would be a useless formality to remand the case for the ALJ to discuss Listing 12.05. *NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality").  "No principle of

---

[7] Additionally, it should be noted that the ALJ did address both scores in his opinion.  (Tr. 15, 17-18) With regard to the 2012 IQ score, the ALJ noted that Santy attained a full scale IQ score of 71 "with noted weaknesses in working memory" (Tr. 17-18) which is consistent with the undersigned's finding that the working memory score is incorporated within the full scale IQ score.  With regard to the 1998 score, as discussed more fully in footnote 4, *supra*, the ALJ appears to discredit the score based on the accompanying report.  (Tr. 15)  Moreover, the cases cited in footnote 5 (finding that an adolescent IQ score was no longer valid for the adult claimant) demonstrate that district court judges have frequently found it was proper to determine the legal validity of an IQ score despite the fact that an ALJ has not addressed the issue in his or her opinion.  For all of the foregoing and subsequent reasons, the analysis here does not constitute post-hac rationalization.

13

administrative law or common sense requires us to remand a case in a quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (*quoting Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 7989)).  Accordingly, Santy has not presented a substantial question that he meets Listing 12.05 because he has not shown the existence of a valid IQ score within the appropriate range.  In addition, it is unnecessary to discuss whether Santy has evidence to satisfy the remaining prongs of Listing 12.05(C).  *See Rabbers*, 582F.3d at 653.  (To meet a listed impairment a claimant must satisfy all of the criterial in the listing).

## VII.    Conclusion

For the foregoing reasons, I find that Santy has not demonstrated a basis upon which to reverse or remand the Commissioner's decision.  For these reasons, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

Dated: December 15, 2016

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).